# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| ANN SYLVESTER, | ) | CASE NO. 4:23-cv-00778-SL |
| Plaintiff, | ) | |
| | ) | U.S. DISTRICT JUDGE |
| | ) | SARA LIOI |
| v. | ) | |
| | ) | U.S. MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL | ) | JENNIFER DOWDELL ARMSTRONG |
| SECURITY, | ) | |
| | ) | |
| Defendant, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

## I.    INTRODUCTION

Plaintiff Ann Sylvester ("Ms. Sylvester") seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for Disability Insurance Benefits ("DIB"). (ECF No. 1.) U.S. District Judge Sara E. Lioi has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). Pursuant to Local Civil Rule 72.2, this matter was referred to me for preparation of a Report and Recommendation. For the reasons set forth below, I RECOMMEND that the Court AFFIRM the Commissioner's final decision.

## II.    PROCEDURAL HISTORY

Ms. Sylvester filed an application for DIB on January 29, 2020, alleging a disability onset date of February 9, 2018. (Tr. 24.)[1] Her application related to congestive heart failure, knee problems, hypertension, hearing loss, fluid retention, meningitis-related hearing loss, and a thyroid condition. (Tr. 169.) Her application was denied initially and upon reconsideration. (Tr. 73-74, 85-86.) Due to the COVID-19 pandemic, an ALJ held an online video hearing on August 25, 2022.

---

[1] The administrative transcript ("Tr.") appears at ECF No. 6 at CM/ECF.

(Tr. 39-59.) Ms. Sylvester, represented by counsel, and a vocational expert ("VE") testified at the hearing. (*Id.*) The ALJ issued a written decision on September 12, 2022, finding Ms. Sylvester was not disabled under the meaning of the Social Security Act. (Tr. 24032.) The ALJ's decision became final on February 24, 2023, when the Appeals Council declined further review. (Tr. 1.)

On April 16, 2023, Ms. Sylvester filed her Complaint, challenging the Commissioner's final decision. (ECF No. 1.) Ms. Sylvester asserts the following assignments of error:

(1) The ALJ's Step Four decision is not supported by substantial evidence.

(2) The ALJ who heard and decided Sylvester's claim lacked proper authority since he was not legally appointed to the inferior role as ALJ.

(ECF No. 8, PageID#1115.)

### III.    BACKGROUND INFORMATION[2]

#### A.  <u>Personal, Educational, and Vocational Experience</u>

Ms. Sylvester was born in 1955, and she was 62 years old on the alleged onset date of disability. (Tr. 39, 133.) She lives alone and has a driver's license. (Tr. 42-43.) She has a college education, and she was a retail manager for a jewelry store from 2003 until injuring her knee at church in February 2018. (Tr. 169-70.)

#### B.  <u>Relevant Statements and Hearing Testimony</u>

##### 1.  *Ms. Sylvester's Disability Report and Earning Statement*

At application, Ms. Sylvester described her prior work as a sales manager from 2003 until February 2018. (Tr. 170-71.) She reported that she worked 10 hours per day, six days per week from 2003 until 2018. (*Id.*)  But she also reported that she worked 15 hours per day, consisting of six hours walking, seven hours standing, and two hours sitting. (*Id.*) In support of her assertion

---

[2] Because Ms. Sylvester raises purely legal issues, the Background Information will not summarize the opinion evidence or medical evidence.

that she worked ten hours per day, Ms. Sylvester described earning $4,000 per month from 2003 until 2018. (Tr. 170.) But Ms. Sylvester's earnings record reveals that she earned less than $48,000 per year during 2003, 2004, 2005, 2006, 2007, 2009, 2015, 2016, and 2017 (Tr. 156.)

### 2. *Ms. Sylvester's Past Work Summary*

Prior to the hearing, the ALJ provided Ms. Sylvester's statements regarding her past relevant work to June Spielman, the vocational expert ("VE"). (Tr. 230.) The VE then completed a "Past Work Summary" (*id.*) and, based on Ms. Sylvester's statements, determined that her past work was classified as a Department Manager, DOT 299.137-010, and was performed at the light exertional level. (*Id.*) The Past Work Summary was admitted into the record at the hearing with no objection by Ms. Sylvester or her attorney. (Tr. 41.)

### 3. *Ms. Sylvester's Hearing Testimony*

At the hearing, Ms. Sylvester testified that, rather than consistently working 60 hours per week, she worked these hours only during the holidays. (Tr. 43.) Specifically, she stated: "And as a sales manager, I mean during the holidays, I would work 50, 60, 70 hours a week." (*Id.*) She stated that she would be on her feet "90% of the time" for her job. (Tr. 44.)

### 4. *Vocational Expert's Hearing Testimony*

The VE testified that she reviewed Ms. Sylvester's casefile and familiarized herself with Ms. Sylvester's vocational background. (Tr. 57.) The VE affirmed that she completed the pre-hearing Past Work Summary, and that Ms. Sylvester's hearing testimony did not alter her classification of Ms. Sylvester's past work. (Tr. 57.) The ALJ asked Ms. Sylvester's counsel whether counsel had any questions regarding the VE's professional qualifications or objection to her testimony as a vocational expert. (*Id.*) Ms. Sylvester's counsel stated she had no objections. (*Id.*)

The ALJ then asked the VE whether there was anything from Ms. Sylvester's testimony that would lead the VE to alter her classification of Ms. Sylvester's past work in any way.  (*Id.*) The VE responded she had no changes.  (*Id.* at 58.)

The ALJ then asked the VE whether a hypothetical individual with Ms. Sylvester's age, education, and work history could perform her past relevant work at the light exertional level except she can never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs, stoop, kneel, crouch, or crawl; and must avoid all exposure to hazards such as unprotected heights and dangerous moving machinery. (Tr. 58.) The VE opined that the individual could not perform Ms. Sylvester's past relevant work as is performed in the national economy but could be performed as it was performed by Ms. Sylvester. (*Id.*)

The ALJ also asked if the VE's testimony would change if the individual were instead limited to the sedentary exertional level with the same postural and environmental restrictions as the first limitation. (*Id.*) The VE stated that this would preclude past relevant work. (*Id.*) The ALJ finally asked the VE whether an individual who worked as a department manger would have acquired any skills transferable to the sedentary exertional level. (*Id.*) The VE opined that there were no transferable skills. (Tr. 59.)

Following that exchange, the ALJ gave Ms. Sylvester's an opportunity to cross-examine the VE. (*Id.* at 59.) Ms. Sylvester's counsel posed a single hypothetical question to the VE regarding the effect of absenteeism on an individual's ability to work. (*Id.*)  Ms. Sylvester's counsel, however, posed no questions to the VE regarding the classification of Ms. Sylvester's past relevant work or the VE's testimony regarding the ability of an individual such as Ms. Sylvester to perform such work. (*Id.*)

## IV.     THE ALJ'S DECISION

The ALJ first determined that Ms. Sylvester met the insured status requirements of the Social Security Act through June 30, 2021. (Tr. 26.) The ALJ then determined that Ms. Sylvester did not engage in substantial gainful activity since February 9, 2018, the alleged disability onset date, through June 30, 2021. (Tr. 27.) The ALJ found that Ms. Sylvester had the following severe impairments: congestive heart failure and obesity. (Tr. 27-28.) However, the ALJ found that none of these impairments—individually or in combination—met or medically equaled the severity of a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 28.)

The ALJ determined that Ms. Sylvester could perform work at the light exertional level, except that she can never climb ladders, ropes, or scaffolds; occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs; would need to avoid concentrated exposure to pulmonary irritants (*e.g.*, fumes, odors, dusts, gases, and poorly ventilated areas); and have no exposure to hazards such as unprotected heights and dangerous moving machinery. (Tr. 28-31.) The ALJ also determined that Ms. Sylvester was capable of performing her past relevant work as a department manager. (Tr. 31.) Specifically, the ALJ determined that this work did not require the performance of work-related activities precluded by Ms. Sylvester's residual functional capacity. (Tr. 31-32.) Accordingly, the ALJ concluded that Ms. Sylvester was not disabled within the meaning of the Social Security Act since her application date through the date of the ALJ's decision. (Tr. 32.)

## V.      LAW AND ANALYSIS

### A.  <u>Standard of Review</u>

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott*

*v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App. 315, 320 (6th Cir. 2015) (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)); *see also* 42 U.S.C. § 405(g). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently[.]" *Cutlip*, 25 F.3d at 286; *Kinsella v. Schweiker*, 708 F.2d 1058, 1059-60 (6th Cir. 1983).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether the Commissioner applied proper legal standards. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.*, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp.

6

2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (alteration in original)).

### B.  Standard for Disability

The Social Security regulations outline a five-step sequential evaluation process that the ALJ must use in determining whether a claimant is disabled: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of his RFC; and (5) if not, whether, based on the claimant's age, education, and work experience, he can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that he is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC to perform available work in the national economy. *Id*.

### C.  Analysis

#### 1.  *Whether Substantial Evidence Supports that Ms. Sylvester Could Perform Her Past Relevant Work.*

In her merits brief, Ms. Sylvester argues that the ALJ's finding that Ms. Sylvester was capable of performing her past relevant work was not supported by substantial evidence because the VE testimony incorporated an RFC that did not account for Plaintiff having purportedly worked for more than 40 hours per week.  (ECF No. 8, PageID#1135-37.) The Commissioner

argues in its opposition brief that Ms. Sylvester waived this Step Four challenge because Ms. Sylvester, through counsel, failed to raise this argument at the ALJ hearing level by cross-examining the VE on this issue. (ECF No. 9, PageID#1148-50.) In her reply brief, Ms. Sylvester cites *Carr v. Saul*, 593 U.S. 83 (2021), for the proposition that "issue-exhaustion rules are creatures of statute or regulation," and then argues that "the Commissioner fails to point to any statute or regulation that imposes issue exhaustion on [Ms.] Sylvester." (ECF No. 10, Page#1164.)

But *Carr*'s holding has no relevance to this case. In *Carr*, the Supreme Court held that social security plaintiffs are not required, as prerequisite to judicial review, to exhaust *constitutional challenges* to the ALJs' appointments. *See* 593 U.S. at 95-96. *Carr* did not involve – much less address – whether it is improper for a court to determine that a claimant waived a Step Four/Five argument where a claimant's counsel fails to cross-examine the VE about any potential conflicts in her testimony. Thus, Ms. Sylvester's assertion that the Commissioner's argument is an improper "attempt to create a judicial issue exhaustion rule" (ECF No. 10, PageID#1163) is not well-taken.

The Commissioner's argument that Ms. Sylvester waived her Step Four challenge by failing to raise it at the ALJ hearing level and cross-examine the VE is well-taken. (ECF No. 9 at 7-9.) As a threshold matter, "the claimant bears the burden of proving … the fact that she is precluded from performing her past relevant work…" *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). To satisfy this burden, a claimant must show that he or she cannot perform his or her past relevant work as "actually performed" *and* as "generally required by employers throughout the national economy." *See* SSR 82-61, 1982 WL 31387, at *2 (1982). The regulations define "past relevant work" as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. §

8

404.1560(b)(1). The regulations also provide the following guidance regarding the determination of whether a claimant is able to perform his or her past relevant work:

> Determining whether you can do your past relevant work. We will ask you for information about work you have done in the past. We may also ask other people who know about your work. (See § 404.1565(b).) We may use the services of vocational experts or vocational specialists, or other resources, such as the "Dictionary of Occupational Titles" and its companion volumes and supplements, published by the Department of Labor, to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity. A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy. Such evidence may be helpful in supplementing or evaluating the accuracy of the claimant's description of his past work. In addition, a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy.

20 C.F.R. § 404.1560(b)(2). Thus, although VE testimony may constitute substantial evidence supporting the conclusion that a claimant can perform her past relevant work, an ALJ is not required to consult a VE. *Id.*; *see also Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010).

A VE's testimony "should be consistent with the occupational information supplied by the DOT." SSR 00-4p, 2000 WL 1898704, at *2. When it is not, the ALJ is required to inquire about the conflict and "obtain a reasonable explanation for the conflict." *Id.* at *4. Beyond this initial inquiry, however, the ALJ has no obligation to further investigate the accuracy of a VE's testimony "especially when the claimant fails to bring any conflict to the attention of the [ALJ]." *Ledford v. Astrue*, 311 F. App'x 746, 757 (6th Cir. 2008).

The Sixth Circuit and district courts within this circuit have generally recognized that a claimant's failure to object to a VE's testimony at the administrative proceeding waives the

claimant's right to raise such issues in the district court. *See, e.g., McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 83, 937 (6th Cir. 2006) (stating that "counsel may not now complain" about the substance of the VE's testimony "because he failed to cross examine [the VE] when he had an opportunity to do so" at the administrative hearing); *Harris v. Comm'r of Soc. Sec. Admin*, No. 1:11-CV-1290, 2014 WL 4434078, at *4 (N.D. Ohio Sept. 24, 2012) ("Plaintiff may not now complain because the ALJ relied upon the VE's description of Plaintiff's past work when Plaintiff failed to raise this issue during the hearing.").

*McClanahan* and *Harris* apply here. Ms. Sylvester was represented by counsel during the administrative hearing, but she never challenged the ALJ's determination regarding her past work or otherwise sought to alert either the ALJ or the VE that there was a potential conflict between the VE's testimony and the evidence of record. Instead, upon cross-examination, the only question that Ms. Sylvester's counsel posed to the VE related to absenteeism would impact one's work. (Tr. 59.) Thus, Ms. Sylvester cannot now complain that the ALJ relied upon the VE's description of her past relevant work when Ms. Sylvester failed to raise this issue at the administrative hearing. *Turner v. Comm'r of Soc. Sec.*, No. 2:19-cv-900, 2019 WL 5781608, at *7-8 (S.D. Ohio Nov. 5, 2019) (finding in the alternative that even if the VE misclassified claimant's past relevant work, claimant waived any objections to the ALJ's reliance on the VE's testimony by not raising the issue at the hearing), *report and recommendation adopted*, 2020 WL 132269 (Jan. 13, 2020); *Stevens v. Comm'r of Soc. Sec.*, No. 2:14-cv-2186, 2016 WL 692546 (S.D. Ohio Feb. 22, 2016) (finding claimant could not object to the ALJ relying upon the VE's testimony when claimant "did not complain or otherwise alert the ALJ that she believed [the VE] had mischaracterized her job"), *report and recommendation adopted*, 2016 WL 1156518 (S.D. Ohio Mar. 24, 2016). Accordingly,

I recommend that the Court reject this assignment of error because Ms. Sylvester waived this argument by failing to raise this issue at the administrative hearing.

### 2. *Ms. Berryhill Was Validly Serving as Acting Commissioner When She Ratified and Approved the Appointments of the SSA ALJs.*

At issue here are the time limits prescribed in the Federal Vacancies Reform Act ("FVRA") for acting service. The FVRA "provides a framework for temporarily filling vacancies in offices for which presidential appointment and Senate confirmation ("PAS") is required." *Northwest Immigrant Rts. Project v. U.S. Citizenship & Immigr. Servs.*, 496 F.Supp.3d 31, 53 (D.D.C. 2020) (citing 5 U.S.C. § 3345 et seg.). Section 3346 (a) of the FVRA imposes time limits on those "serving as an acting officer." 5 U.S.C. § 3346(a). This statute provides:

> (a) Except in the case of a vacancy caused by sickness, the person serving as an acting officer as described under section 3345 may serve in the office –
>
> > (1) For no longer than 210 days beginning on the date the vacancy occurs; *or*
> >
> > (2) Subject to subsection (b), once a first or second nomination for the office is submitted to the Senate, from the date of such nomination for the period that the nomination is pending in the Senate.

*Id.* (emphasis added).

Nancy Berryhill, then the Deputy Commissioner of Operations for SSA, was designated Acting Commissioner on January 21, 2017, and served until November 16, 2017, when the initial 210-day period for acting service expired. On April 17, 2018, President Trump nominated Andrew Saul to be the Commissioner of SSA. Upon submission of the nomination, Ms. Berryhill resumed her service as Acting Commissioner, *see* 5 U.S.C. § 3346(a)(2), and served until Mr. Saul was sworn in as Commissioner. On July 16, 2018, Acting Commissioner Berryhill ratified the

appointments of all SSA ALJs and approved them as her own. *See* SSR 19-1p, 2019 WL 1324866 (2019).

Here, Ms. Sylvester does not dispute that the ALJ's appointment was ratified by Ms. Berryhill and approved as her own at a time when Ms. Berryhill served as the Acting Commissioner of the Social Security Administration. Ms. Sylvester asserts, however, that Ms. Berryhill's use of her title as Acting Commissioner at the time of ratification was inconsistent with the time limits on acting service imposed by FVRA § 3346(a).

This is an issue of first impression for the Sixth Circuit. Significantly, three appellate courts in as many circuits have directly addressed this issue; all of them have held that the FVRA permitted Ms. Berryhill's service at that time, and that her ratification of the ALJ's appointment was therefore valid. *Rush v. Kijakazi*, 65 F.4th 114 (4th Cir. 2023), *cert denied sub nom. Rush v. O'Malley*, No. 23-243, 2024 WL 674707 (U.S. Feb. 20, 2024); *Seago v. O'Malley*, 91 F.4th 386 (5th Cir. 2024); *Dahle v. Kijakazi*, 62 F.4th 424 (8th Cir. 2023), *cert denied sub nom. Dahle v. O'Malley*, 144 S.Ct. 549 (2024). In addition, numerous district courts in the Sixth Circuit and other circuits have reached the same conclusion.[3] The persuasive reasoning from these courts demonstrates why Ms. Sylvester's proposed statutory interpretation argument fails.

---

[3] *See Joseph F. v. Comm'r of Soc. Sec.*, No. 22-12593, 2023 WL 3853682, at *7-8 (E.D. Mich. June 6, 2023); *Kring-Schreifels v. Kijakazi*, No. 22-110, 2023 WL 3097210, at *8-10 (E.D. Pa. Apr. 26, 2023); *Sherrill v. Kijakazi*, No. 22-cv-2325-SHM-tmp, 2023 WL 2772126, at *1-2 (W.D. Tenn. Apr. 4, 2023); *Alicia M. v. Comm'r of Soc. Sec.*, No. 2:21-cv-00433-REP, 2023 WL 2744135, at *9-10 (D. Idaho Mar. 31, 2023); *Garcia v. Kijakazi*, No. 22-CV-60757-RUIZ/STRAUSS, 2023 WL 2540441, at *7-12 (S.D. Fla. Mar. 1, 2023), *report and recommendation adopted*, 2023 WL 2536491 (S.D. Fla. Mar. 16, 2023); *Tamara G. v. Comm'r of Soc. Sec. Admin.*, No. 3:22-CV631-D-BK, 2023 WL 2504912, at *4-5 (N.D. Tex. Feb. 13, 2023), *report and recommendation adopted*, 2023 WL 2518840 (N.D. Tex. Mar. 14, 2023); *Tyson v. Kijakazi*, No. 1:21-cv-00688-BAM, 2023 WL 2313192, at *6-7 (E.D. Cal. Mar. 1, 2023); *Wolff v. Comm'r of Soc. Sec.*, No. 2:22-cv-177-SPCNPM, 2023 WL 1971935, at *4-5 (M.D. Fla. Jan. 27, 2023), *report and recommendation adopted*, 2023 WL 1967586 (M.D. Fla. Feb. 13, 2023); *Spain v. Soc. Sec. Admin.*, No. 21-2367, 2023 WL 1786722, at *4-7 (E.D. La. Jan. 18, 2023), *report and recommendation adopted*, 2023 WL 1779186 (E.D. La. Feb. 6, 2023); *Boller v. Comm'r, SSA*, No. 4:21-CV-01001-SDJ-CAN, 2022 WL 18586837, at *7 (E.D. Tex. Dec. 12, 2022), *report and recommendation adopted*, 2023 WL 1765909 (E.D. Tex. Feb. 3, 2023); *Coe v. Kijakazi*, No. 5:22-cv226-KDW, 2023 WL 554119, at *11-13 (D.S.C. Jan. 27, 2023); *Hernandez v. Comm'r of Soc. Sec.*, No 21-CIV-10658, 2022 WL 18402121, at *10-15 (S.D.N.Y. Dec. 16, 2022), *report and recommendation adopted*, 2023 WL 358780 (S.D.N.Y. Jan. 23, 2023); *Silva v. Kijakazi*, No. 2:21-CV-

Statutory interpretation "begins with the text." *Ross v. Blake*, 578 U.S. 632, 638 (2016); *see also Brilliance Audio, Inc. v. Haights Cross Comm'ns, Inc.*, 474 F.3d 365, 361 (6th Cir. 2007) ("As with any question of statutory interpretation, we must first look to the language of the statute itself."). "Only if the statute is inescapably ambiguous should a court look to other persuasive authority"—such as legislative history—"in an attempt to discern legislative meaning." *Id.* (citation and internal quotation marks omitted); *see also In re Danny's Markets, Inc.*, 266 F.3d 523, 525 (6th Cir. 2001) ("When…a statutory term is ambiguous, it is our duty to examine the legislative history in order to render an interpretation that gives effect to Congress's intent.") (citation and internal quotation marks omitted).

Here, the plain text of FVRA § 3346(a) is unambiguous. The FVRA establishes two timelines for acting service. The first timeline allows an acting officer to serve "for no longer than 210 days beginning on the date the vacancy occurs." 5 U.S.C. § 3346(a)(1). The second timeline begins "*once* a first or second nomination for the office is submitted to the Senate" and extends "for the period that the nomination is pending in the Senate." *See id.* § 3346(a)(2) (emphasis

---

00301, 2022 WL 18144262, at *6-7 (S.D. Tex. Oct. 5, 2022), *report and recommendation adopted*, 2023 WL 123789 (S.D. Tex. Jan. 5, 2023); *Watts v. Kijakazi*, No. 21-2044, 2022 WL 18109797, at *10-15 (E.D. La. Nov. 18, 2022), *report and recommendation adopted*, 2023 WL 35799 (E.D. La. Jan. 3, 2023); *Vanorden v. Comm'r of Soc. Sec.*, No. 21- 19985, 2022 WL 17959586, at *4-5 (D.N.J. Dec. 27, 2022); *Seago v. Kijakazi*, No. 1:21-cv-136, 2022 WL 17853369, at *5-6 (S.D. Tex. Nov. 15, 2022), *report and recommendation adopted*, 2022 WL 17852795 (S.D. Tex. Dec. 22, 2022), *aff'd sub nom. Seago v. O'Malley*, 91 F.4th 386 (5th Cir. 2024); *Bernadette H. v. Comm'r of Soc. Sec.*, No. 1:21-cv-20586-NLH, 2022 WL 17080743, at *8-9 (D.N.J. Nov. 18, 2022); *Reddick v. Kijakazi*, No. 3:21-cv-01782, 2022 WL 16703903, at *12-17 (M.D. Pa. Oct. 7, 2022), *report and recommendation adopted*, 2022 WL 16700395 (M.D. Pa. Nov. 3, 2022); *Neale v. Kijakazi*, No. 21-915-SRF, 2022 WL 6111689, at *9 (D. Del. Oct. 7, 2022); *Taylor v. Kijakazi*, No. 1:21CV648, 2022 WL 4668273, at *8-12 (M.D.N.C. Aug. 2, 2022), *report and recommendation adopted*, 2022 WL 4621418 (M.D.N.C. Sept. 30, 2022); *Sidney M. v. Kijakazi*, 630 F. Supp. 3d 1077, 1098-1101 (N.D. Iowa 2022); *Snyder v. Kijakazi*, No. 1:21-CV-00103-LRR, 2022 WL 4464847, at *15-23 (N.D. Iowa Sept. 26, 2022); *Brooks v. Kijakazi*, No. 1:21CV609, 2022 WL 2834345, at *13-23 (M.D.N.C. July 20, 2022), adopted by 2022 WL 17832126 (M.D.N.C. Aug. 19, 2022); *Mia S. v. Kijakazi*, No. 8:21-CV-439, 2022 WL 3577023, at *13-14 (D. Neb. Aug. 19, 2022); *Jamie K. v. Kijakazi*, No. 8:21-CV-373, 2022 WL 3577013, at *14-15 (D. Neb. Aug. 19, 2022); *Lance M. v. Kijakazi*, No. 2:21-cv-628, 2022 WL 3009122, at *10-14 (E.D. Va. July 13, 2022), *report and recommendation adopted*, 2022 WL 3007588 (E.D. Va. July 28, 2022); *Bauer v. Kijakazi*, No. 21-CV2008-KEM, 2022 WL 2918917, at *2-9 (N.D. Iowa July 25, 2022); *Parker v. Kijakazi*, No. 1:21- CV-231-GCM, 2022 WL 2163007, at *2 (W.D.N.C. June 15, 2022), *aff'd, Rush*, 2023 WL 2877081; *Avalon v. Kijakazi*, No. 2:21-cv-02051-NJK, 2022 WL 1746976, at *8 (D. Nev. May 27, 2022); *Thomas S. v. Comm'r*, No. C21-05213-MAT, 2022 WL 268844, at *3 n.2 (W.D. Wash. Jan. 28, 2022).

added). The use of the word "once" in the statute indicates that acting service in the second period

begins "*at the moment when*" a nomination is submitted to the Senate, regardless of whether this

submission took place during the initial 210 days or at some later point. *Id.*; *see Once*, Merriam-

Webster Dictionary, https://www.merriam-webster.com/dictionary/once (last visited Feb. 22,

2024) (defining "once" as "at the moment when" or "as soon as"); *Seago*, 91 F.4th at 391. The

language of the statute does not say that service under § 3346(a)(1) excludes someone from also

serving under § 3346(a)(2). Rather, "[s]ubsections 1 and 2 operate independently;" subsection 2

"provides an independent period of time for an individual to serve as an acting officer;" and thus

an individual may "serve noncontinuously under subsections 1 and 2." *Dahle*, 62 F.4th at 427,

429.

  As the Commissioner points out, the text of the FVRA gives each period a separately

defined start and end date. The use of the disjunctive "or" to separate § 3346(a)(1) and § 3346(a)(2)

lends support for this interpretation. *Seago*, 91 F. 4th at 392 ("The use of the word 'or' to separate

the two subsections confirms that these two periods can operate independently.") (citing *Encino

Motorcars, LLC v. Navarro*, --- U.S. ---, 138 S. Ct. 1134, 1141 (2018) (explaining "or" is "almost

always disjunctive"); *Horne v. Flores*, 557 U.S. 433, 454 (2009) ("Use of the disjunctive 'or'

makes it clear that each of the provision's three grounds for relief is independently sufficient.");

*Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) (stating that Congress' use of the word "or"

indicates that one term should not be read to "modify" the other)).[4] By using the disjunctive "or,"

the FVRA provides for acting service during either or both of the two periods: (1) for 210 days

---

[4] *See also Loughrin v. United States*, 573 U.S. 351, 359 (2014) (finding that two clauses separated by "or" that have "separate numbers, line breaks before, between, and after them, and equivalent indentation—thus placing the clauses visually on an equal footing" is an "indicat[ion] that they have separate meanings); 1A Singer, *Sutherland Statutes and Statutory Construction* § 21.14 (7th ed.) ("Generally, courts presume that 'or' is used in a statute disjunctively unless there is clear legislative intent to the contrary.").

after the vacancy, or (2) during the pendency of a first or second nomination. *See Rush*, 65 F.4th at 119 ("The word 'or' signals that we should give § 3346(a)(2) its 'independent and ordinary significance,' not read it 'to modify' § 3346(a)(1).") (quoting *Reiter*, 442 U.S. at 338-39; *Dahle*, 62 F.4th at 427 ("The use of 'or' as a connector between subsections 1 and 2 requires the subsections be given distinct, independent meanings."); *Scott v. Comm'r of Soc. Sec.*, No. 4:22-cv-878, 2022 WL 18863813, at *16 (N.D. Ohio Dec. 14, 2022) ("As other courts have recognized, however, the use of *or* in Section 3346(a) is more naturally read as being inclusive and denoting alternatives.") (citing *Snyder v. Kijakazi*, No. 1:21-CV-00103-LRR, 2022 WL 4464847, at *2 (N.D. Iowa Sept. 26, 2022)), *report and recommendation adopted sub nom. Scott v. Kijakazi*, 2023 WL 4010687 (N.D. Ohio June 15, 2023)); *see also Taylor v. Kijakazi*, No. 1:21CV648, 2022 WL 4668273, at *10 (M.D.N.C. Aug. 2, 2022), *report and recommendation adopted*, 2022 WL 4621418 (N.D. Ohio Sept. 30, 2022).

Reading the use of the word "once" and "or" together, the submission of a nomination to the Senate serves as a "single trigger" (ECF No. 9, PageID#1153) for permissible service during the first or second nomination's pendency. Thus, applying the plain text of § 3346(a)(2), "*once*" Mr. Saul's "nomination for office" of Commissioner "[wa]s submitted to the Senate." Ms. Berryhill could serve "for the period that the nomination [wa]s pending in the Senate." *Id.* § 3346(a)(2); *Scott*, 2022 WL 18863813, at *15.

This statutory analysis is supported by the fact that the statute does not include a requirement that a nomination be submitted within the initial 210-day period. The statute just states that "once a first or second nomination … is submitted," the acting official designated under the FVRA may serve "for the period that the nomination is pending." 5 U.S.C. § 3346(a)(2); *see Seago*, 91 F. 4th at 391 ("[T]here is *nothing* in the text that says—or, arguably, even suggests—service

15

under § 3346(a)(1) excludes someone from also serving under § 3346(a)(2)) (emphasis in original). Courts should "resist reading words … into a statute that do not appear on its face." *Dean v. United States*, 556 U.S. 568, 572 (2009) (cleaned up). Indeed, as the Fifth Circuit observed, "[if] Congress had intended the expiration of an acting officer's 210 days of service under (a)(1) to disqualify her from serving in an acting capacity pursuant to (a)(2), surely it would have said so, but it did not." *Seago*, 91 F.4th at 391; *see also Rush*, 65 F. 4th at 121 ("Congress … had many ways it could have conditioned the availability of § 3346(a)(2)'s period of acting service on a nomination occurring during § 3346(a)(1)'s initial 210 days. Congress used none of them.").[5]

Ms. Sylvester relies on two outlier cases from the Northern District of Texas and the Northern District of Arizona in support of her proposed interpretation, *i.e.*, *Miller v. Comm'r of Soc. Sec.*, No. 4:21-cv-01007-O-BP, 2023 WL 3814551 (N.D. Tex. June 5, 2023)[6] and *Foster v. Comm'r of Soc. Sec. Admin.*, No. CV-22-00290-PHX-JAT, 2023 WL 2661608 (D. Ariz. Mar. 28, 2023). But as set forth in footnote 3 herein, these cases represent the minority view. And as stated above, the Fourth, Fifth, and Eighth circuit courts have squarely rejected Ms. Sylvester's proposed interpretation of the statute. And several district courts—including those within the Sixth Circuit— agree that § 3346(a)(2) allowed Ms. Berryhill to properly resume her service as Acting Commissioner when Mr. Saul was nominated for Commissioner in April 2018, giving her the authority to nominate the ALJ overseeing the contested case. *See, e.g.*, *Williams v. Kijakazi*, No. 1:21-CV-141-GCM, 2022 WL 2163008, at *3 (W.D.N.C. June 15, 2022) (observing that the

---

[5] The Commissioner also includes a thoughtful analysis of the legislative history and the views of the Executive Branch and Legislative Branch in support of the argument that § 3346(a)(2) allows a new period of acting service upon submission of a nomination. But this argument need not be addressed because the plain text of the statute demonstrates that § 3346(a) of the FVRA is unambiguous. *See Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 392 (6th Cir. 2016) ("Because we can give these words their ordinary meaning without any resulting ambiguity, resort to legislative history is not necessary.").

[6] In *Seago*, the Fifth Circuit recently joined the Fourth and Eighth Circuits in holding that FVRA § 3346(a)(2) operates both as a tolling provision and as an independent period of acting service. *Seago v. Comm'r of Soc. Sec.*, 91 F.4th 386 (5th Cir. 2024). The *Seago* court specifically referenced *Miller* but declined to adopt its holding.

FVRA contains no mention of "any requirement that a nomination be submitted within the initial 210-day period" in order to allow "the acting official designated under the FVRA" to serve while a nomination is pending); *Newman v. Kijakazi*, No. 5:22-59-KKC, 2023 WL 2700700, at *6 (E.D. Ky. Mar. 29, 2023) ("The vast majority of federal courts addressing this issue…agree…that § 3346(a)(2) is a spring-back provision that allowed Berryhill to properly resume her service."); *Tidwell v. Kijakazi*, No. 3:22-cv-0185, 2023 WL 2531483, at *7 (M.D. Tenn. Apr. 3, 2023) ("[B]ased on the plain language of the FVRA, Ms. Berryhill was properly serving as Acting Commissioner of the SSA, and therefore, had the authority to nominate the ALJ that oversaw Plaintiff's case[.]"); *Anthony O. v. Kijakazi*, No. 3:22-CV-00361-CHB, 2023 WL 4365932, at *7 (June 2, 2023) ("Other districts have … f[ound] Berryhill had authority to ratify the appoints of ALJs during her second term as Acting Commissioner because the plain language of § 3346(a) provides for 'acting service in two instances: during the initial 210 days after a vacancy is created, and while a nomination is pending.'") (further citations omitted).

Ms. Sylvester relies on the word "serving" in the prefatory clause of § 3346(a) to argue that the present participle indicates that only people presently serving as acting officers may continue to serve once the President submits a nomination.[7] (*See* ECF No. 8, PageID#1136-38.) Ms. Sylvester's argument is similar to the one advanced in *Brian T.D. v. Kijakazi*, 580 F.Supp.3d 615 (D. Minn. Jan. 20, 2022), *rev'd and remanded sub nom. Dahle v. Kijakazi*, 62 F.4th 424 (8th Cir. 2023), *cert denied sub nom. Dahle v. O'Malley*, 144 S.Ct. 549 (2024).  In *Brian T.D.*, the district court read § 3346(a)'s prefatory language—which provides that the time limits apply to a person "*serving* as an acting officer as described under section 3345," 5 U.S.C. § 3346(a)

---

[7] Notably, even the district court in *Miller* did not support this interpretation of "serving" in § 3346(a)(2). In fact, the *Miller* court found this argument unpersuasive because "the use of the present tense is fairly read as a reference to those identified in § 3345 as qualified to serve in the acting capacity." *Miller*, 2023 WL 3814551, at *5 n.12.

(emphasis added)—to mean that *only* "the person presently serving in [an acting] capacity" may serve during the pendency of a nomination. *Brian T.D.*, 580 F.Supp.3d at 629.

But this interpretation ignores that the prefatory language applies to § 3346(a)(1) *and* (a)(2). If one applied Ms. Sylvester's interpretation and that of *Brian T.D.*, that would mean only someone already serving as an acting officer could serve even during the initial 210-day period. Notably, the Eighth Circuit rejected this interpretation. Specifically, the Eighth Circuit explained that, if an individual "must be 'serving' to qualify to serve under subsection 2, then it would follow that an individual must be 'serving' to qualify to serve under subsection 2. That would require an individual be properly serving as an acting officer before their 210-day period under § 3346(a)(1) begins, an impossibility." *Dahle*, 62 F.4th at 428; *see also Rush*, 65 F.4th at 122 ("Appellants' interpretation of § 3346(a) would therefore render nugatory the provisions of § 3345 that authorize the President to designate acting officers.").

Ms. Sylvester's interpretation would lead to absurd results. It would mean the President could never exercise his statutory right to designate a different official in place of a first assistant after the 210-day period commenced, *see* 5 U.S.C. § 3345(a)(2)-(3), because he would be installing an official who was not already "serving." If an acting officer later became unavailable, then the President would be disabled from directing any other person to serve in an acting capacity, even if 210 days had not yet elapsed or if the President had made a nomination within 210 days and that nomination was still pending. Such absurd results should be avoided. *See Crisco v. Kijakazi*, No. 1:22CV38, 2023 WL 2142681, at *13 (M.D.N.C. Feb. 21, 2023) (finding that plaintiff's interpretation of the "serving" language § 3346(a) would "render[] the time limits [of VFRA § 3346(a) nonsensical"); *see also United States v. Turkette*, 452 U.S. 576, 580 (1981) (holding that, in construing statutory language, "absurd results are to be avoided"); *Sorrells v. United States*, 287

U.S. 435, 447 (1932) ("All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to … an absurd consequence.").

Further, as other courts have persuasively held, the prefatory language should be properly read to clarify that the time limits established in § 3346(a) apply only to a person serving under § 3345. As the Fifth Circuit explains, the word "serving" should be understood in the context of the phrase in which it appears: "serving as an acting officer as described under section 3345." *Seago*, 91 F.4th at 392 (quoting 5 U.S.C. § 3346(a)). This context is important because there are other PAS office-specific statutes that have alternative means for filling vacancies. *Id.* (citing 42 U.S.C. § 902(b)(4) (delineating some circumstances under which the Deputy SSA Commissioner will serve as Acting Commissioner of the SSA)). And the broader statutory context is relevant here because § 3346(a) "does not grant the power to serve, but places time restrictions on service under § 3345." *Id.* (citing *Dahle*, 62 F.4th at 428; *Rush*, 65 F.4th at 122); *Dahle*, 62 F. 4th at 428 ("The logical way to read the phrase 'the person serving' is as a reference to the person qualified to be serving under § 3345, not as a reference to individuals 'presently' serving under § 3346(a)(1)"); *Rush*, 65 F.4th at 122 ("It is far more likely that the language of § 3346(a)—'the person serving as an acting officer as described under section 3345'—functions to specify that § 3346's time limitations apply to acting officers *whose authority derives from 5 U.S.C. § 3345 rather than some other statute.*") (emphasis in original).[8] As the *Brooks* court concluded, this "straightforward," "descriptive" reading of the prefatory language aligns with a "common sense" interpretation of § 3346(a) and avoids creating absurd results, such as "inconsistencies with other provisions of the

---

[8] *See also Lance M. v. Kijakazi*, No. 2:21CV628, 2022 WL 3009122, at *13 (E.D. Va. July 13, 2022) ("When this qualifying clause is properly considered, the prefatory language has nothing to do with a period of 'present service.' Instead, it constrains section 3346(a)'s scope to individuals whose authority stems from the FVRA."), *report and recommendation adopted*, 2022 WL 3007588 (E.D. Va. July 28, 2022).

FVRA." *Brooks v. Kijakazi*, No. 1:21CV609, 2022 WL 2834345, at *16-17 (M.D.N.C. July 20, 2022).

Finally, Ms. Sylvester invites this Court to conclude that the Fourth and Eighth Circuit Courts erred in their conclusions because the appellate courts disregarded "on point" dicta from the Supreme Court, *i.e.*, *N.L.R.B. v. SW General, Inc.*, 580 U.S. 288 (2017). It is true that *SW General* described the 210-day period as being "toll[ed]" during a nomination. *See SW General*, 580 U.S. at 295. The Supreme Court, however, did not consider whether § 3346(a)(2) would operate when a nomination is submitted *after* the initial 210-day period of acting service has expired. *Seago*, 91 F.4th at 392 ("The Supreme Court in *SW General* did not … say that § 3346(a)(2) is exclusively a tolling provision."); *Rush*, 65 F.3th at 122 ("[FVRA §] 3346 was not at issue in *SW General*; the case concerned § 3345(b)'s restrictions on acting service by nominees."); *Dahle*, 62 F. 4th at 428 (rejecting plaintiff's reliance on *SW General*, noting that the relevant language was dicta and that the statement that §3346(a)(2) can act as a tolling provision did not mean that §3346(a)(2) was "*solely* a tolling provision") (emphasis in original). Because Ms. Sylvester fails to demonstrate that *SW General* has any relevance to this case, Ms. Sylvester's argument fails.

In sum, in light of the well-reasoned Fourth, Fifth, and Eighth Circuit decisions, as well as the vast majority of district court decisions that have addressed this issue, Ms. Sylvester presents no good reason for this Court to adopt her proposed statutory construction. Thus, based on the plain language of the FVRA, I find that Ms. Berryhill was properly serving as the Acting Commissioner when she ratified the appointments of the SSA ALJs and Appeals Council judges in July 2018. Accordingly, I recommend that the Court reject Ms. Sylvester's argument that

remand is required because the ALJ who denied her application was allegedly not properly ratified by Ms. Berryhill.[9]

## VI.    RECOMMENDATION

Based on the foregoing, I RECOMMEND that the Court AFFIRM the Commissioner's final decision.

Dated: February 26, 2024                    /s Jennifer Dowdell Armstrong
                                            Jennifer Dowdell Armstrong
                                            U.S. Magistrate Judge

## VII.    NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

> **Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need not conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

Id. (emphasis added).

---

[9] The Commissioner presents alternative arguments if this Court found the Commissioner's ratification was invalid, e.g., the "de facto officer doctrine" and "law of remedy." (See ECF No. 9, PageID#1158-61.) This Report and Recommendation does not address these arguments because it determined that Ms. Berryhill was properly serving as the Acting Commissioner under § 3346(a) of the FVRA.

Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-531 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).